Response and Opposition to Motion to Dismiss | Case No: CV12-1956 PHX DGC

Name: **DENNIS C ELWESS**

Address: 20298 East Poco Calle

City, State, Zip: Queen Creek, Arizona 85142

Daytime Phone: (480) 235-1745

Email: dcelwess@yahoo.com

*Representing Self, Without a Lawyer*

FILED ___ LODGED
___ RECEIVED ___ COPY
NOV 2 6 2012
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ P DEPUTY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **DENNIS C ELWESS**<br>Plaintiff,<br><br>vs.<br><br>**OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY** and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** and **LITTON LOAN SERVICING LP** and **OCWEN LOAN SERVICING LLP**<br>Defendants, ) | Case # **CV12-1956 PHX DGC**<br><br>**PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Dated: November 26, 2012 |

  **COMES NOW** Plaintiff Dennis C. Elwess to submit his *Response and Opposition to Defendants' Motion to Dismiss*.

 Defendants' *Motion to Dismiss* was not timely filed after the filing of the Complaint. Instead it was filed far more later than what local rules would permit -- and thus should be denied for violating local rules on civil procedure regulating the timing to file an answer to a complaint or a responsive document.

## DEFENDANTS' FORECLOSURE IS CONTRACTUALLY IMPERMISSIBLE

1. On page 4 of their Motion, Defendants allege that Plaintiff's Note and Deed of Trust were assigned to the Bank of New York Mellon ("BONYM") f/k/a The Bank of New York as Trustee for the Certificate holders CWABS, Inc., Asset Backed Certificates, Series 2006-09.
2. Pursuant to the Pooling and Servicing Agreement ("PSA") for that Series, BONYM's exclusive remedy is repurchase of any offending loan, a contractual limitation that BONYM is violating with its attempted foreclosure.
3. The PSA and other trust documents governing the loan sale expressly provide that
   *"The obligation of the seller to cure, purchase or substitute any defective mortgage loan as described above will constitute the __sole remedy__ available to certificate holders or the trustee for a defective mortgage loan."*

4. Therefore, the remedy of foreclosure being sought by Defendants is contractually impermissible because the "sole remedy" available to the trustee is with the seller of the loan -- not with the Plaintiff.
5. Defendants lack standing or entitlement to foreclose.

6. The terms of the Pooling and Servicing Agreements contemplate the possibility that some of the mortgage loans sold to the trust may be found to breach the Seller's representations and warranties, and that some of these breaches may materially and adversely affect the value of a particular mortgage loan or the interests of the trust in that loan. *In general, a party that discovers such a breach must notify the other parties*. Once such a material and adverse breach is discovered and *any necessary notice is given*, the PSA provides for a very specific —and very *loan*-specific—process for remedying the breach.
7. As to any particular mortgage loan that breaches a representation or warranty in a manner that has a material and adverse effect on the value of the loan, *all of the PSAs provide for three—and only three—remedies:*

   The Seller can:
   (1) cure the breach,
   (2) substitute another mortgage loan into the trust in place of the breaching loan, or
   (3) repurchase the breaching loan from the trust.

8. *All of the PSAs are explicit that these are the sole and exclusive remedies for breaches of representations and warranties.* At some point in time—usually two years after closing of the securitization—the option of substituting a different mortgage is no longer available, again to abide by certain accounting rules and benefit from certain tax treatment. Thus, in instances in which the Seller is unable to cure the defect in the loan (often by providing missing documentation), it is correct to say that, after the substitution period has passed, repurchase is the lone remaining remedy for breaches of representations and warranties.

9. It is evident that Defendants in this case are contractually not permitted to initiate foreclosure or file a lawsuit against a mortgagor in the event of a mortgage loan being defaulted upon. Defendants' sole remedy is against the Seller of that particular mortgage loan -- not the homeowner.
10. BONYM has presented no facts to suggest that it has the authority or is contractually capable of litigating or foreclosing against Plaintiff.

## STATUTES OF LIMITATIONS CONSIDERATIONS

11. Defendants have pleaded no facts to suggest that their claims against Plaintiff comply with the applicable statutes of limitations that bar claims by trusts.
12. As far as Plaintiff is aware, the trust Series 2006-09 is incorporated in Delaware.
13. In Delaware, the statute of limitations for a breach of contract action is three years. *See* DEL. CODE ANN. tit. 10, § 8106.
14. Since the closing of the Series 2006-09 trust was in December 2006, then all claims based on mortgage loans are time barred as of December 2009.

## TRANSFER OF THE ALLEGED LOAN TO TRUST

15. Furthermore, Defendants state that Plaintiff's Note and Deed of Trust ("DOT") were assigned to the trust on <u>August 7, 2009</u>. However, <u>that trust was closed in 2006 and could not have accepted any additional loans in 2009</u>.
16. Plaintiff denies that the alleged trust owns the alleged loan.
17. There is no evidence showing that PSA requirements on loan acquisitions were complied with -- regarding the loan subject to this litigation.

## DEFINING DEFAULT

18. In the PSA of a Trust Series, the definition of "default" does not include a default by a mortgagor on a mortgage loan. There is no evidence in the PSA and Trust documents to prove that the Trustee of the Series 2006-09 Trust in this case is entitled to act against a mortgagor.

## DEFENDANTS' CONTRADICTIONS

19. Defendants introduced contradictory reasoning upon which they seek to foreclose and fraudulently convert title to property.

### *DOT not an instrument*

20. On page 3 of their Motion, Defendants assert that the DOT is a "Security Instrument." However, on page 9, Defendants state that the DOT is NOT an "instrument" under Arizona law.
21. Based on their own argument, the DOT which they refer to in their pleading was drafted as an "instrument" contrary to Arizona law, and thus is unenforceable.

### *The Note and DOT*

22. On page 4 of its Motion, Defendants claim "Plaintiff's Note and DOT were "assigned" to The Bank of New York Mellon.
23. Defendants claim that the Note and the DOT are "Plaintiff's," while they deny that Plaintiff has the right to contest the validity of unauthenticated documents introduced by Defendants to enforce said Note and DOT -- claiming that Plaintiff is not a party to these documents.
24. Furthermore, there is not any authenticated document to prove that the Note and DOT are actually in the possession of the trust that allegedly acquired them.
25. In standard acquisition of mortgage documents, the PSA of a trust would outline the criteria and steps to be taken during acquisition.
26. Defendants failed to prove that these steps were fulfilled and failed to present authenticated documentations to prove that the Note and DOT are actually in possession of the Trust.

## ADDITIONAL LEGAL ANALYSIS

### A.   *Res Judicata*

27. The doctrine of Res Judicata is inapplicable when the courts never genuinely evaluated material facts of the case.

28. Furthermore, the issues and the parties are not totally the same.

### B.   *Amount owed under the loan*

29. Defendants claim "Plaintiff does not allege that he has satisfied his mortgage obligations" or is ready "to tender the full amount owed under the loan." Defendants fail to specify the exact amount of what they allege to be owed and the general ledger accounting for that amount.
30. Plaintiff denies owing any amount to the foreclosing Defendants.
31. Plaintiff denies owing any amount to the original lender, which was paid fully.
32. Plaintiff asserts that any original loan to the original lender (as specified by the Note and DOT) was paid fully -- and thus Plaintiff's "obligations" under the loan have been satisfied and extinguished pursuant to the doctrine of subrogation.

### C.   *"Show me the Note"*

33. It is Defendants' classical response to classify Plaintiff's arguments under the so-called "show me the Note" theory -- although Plaintiff is actually advocating "Show me the Law" and "Show me Common Sense" theories.
34. Defendants seek to foreclose while they never once outlined all the lawful criteria that a foreclosing party has to meet, and how they met these criteria.
35. Defendants claim that they could act "without regard to the holder of the note." In other words, Defendants claim that the alleged trustee could sell the property even if the owner of

the loan is not ascertained - without explained to whom the proceeds of the sale would go in that situation when the real owner the debt is unknown.

36. Defendants cite **ARS §§ 33-801-821**: the "trustee of a trust deed" may foreclose "after a breach or default in performance of the contract . . ."
37. Defendants cite **ARS §§ 33-801-821** without explaining how these provisions apply to them.
38. Plaintiff dispute that the foreclosing trustee is a valid trustee, and Defendants failed to prove the validity of the alleged trustee and simply stated that Plaintiff could not contest the documents allegedly appointing the foreclosing trustee.
39. Plaintiff denies breach of the Note and DOT, and Defendants failed to cite a specific provision of the "contract" that has been breached.

40. Plaintiff denies that the current foreclosing party is a party to any contract with Plaintiff affecting Plaintiff's real property.
41. Defendants ignore basic facts and then cite numerous case law and provision without explaining how these provisions apply to them or how they themselves fit within what they had quoted.
42. For example, to quote a case law on the powers of trustee does not in itself render the alleged trustee in this case to be a valid trustee entitled to exercise those powers.

D.  **The Role of MERS**

43. There is no evidence that BONYM and its trust are members of the MERS system to justify Defendants' assertions on page 10 that no recordation would be required of any transfer of interest.
44. Here again, on page 10 of their Motion, Defendants present case laws and never explain how the quotation apply to them. They simply let the untrained and unskillful reader conclude an inference where no evidence exists to support such an inference.
There is no evidence on record to prove the existence of any endorsement on the Note made
45. form MERS to the BONYM or the Series 2006-09 trust.
46. Repeatedly, Defendants use the terms "appointed," "substituted," or "had authority" while they never prove the authority of the appointing and the substituting party to make such an appointment or substitution.
47. In conclusion, Plaintiff deny all other assertions in Defendants' Motion without individually responding to them because Defendants repeatedly use the terms "appointed," "substituted," or "had authority" while they never prove the authority of the appointing and the substituting party to make such an appointment or substitution.
48. Defendants never proved that they have suffered any injury from any alleged default by Plaintiff, or provided any specific amount of damages or how said damages were calculated.
49. On the other hand, Plaintiff's injury is easily ascertained by calculating the value of Plaintiff's property that Defendants seek to sell in a foreclosure sale, in addition to the monetary amounts or investment made throughout the years on the Property.
50. Defendant's fraud and misrepresentations are easily ascertained. The time and place of said fraud is the time of the documents advanced by Defendants, the place where the documents were executed, and the parties involved are named in the respective documents.
51. Plaintiff, a pro se, has meritorious claims and is entitled to file any amended complaint.

**WHEREFORE,** Plaintiff moves the Court to deny Defendant's *Motion to Dismiss*, to cancel the foreclosure sale, and to forever enjoin any of the Defendants from taking any action against Plaintiff's property.

**ADDITIONALLY,** Plaintiffs moves this Court find every Defendant attempting to foreclose liable for punitive damages for failing to make a "reasonable inquiry" pursuant to **Ariz. R. Civ. P. 11** on their claim that they have a right to foreclose and to hold Trustee's sale.

**LASTLY**, Plaintiff moves this court to order any other and further relief as the Court may deem just and proper.

Respectfully Submitted,

_____
Dennis C. Elwess

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and exact copy of the above has been furnished by U.S. Mail on this 26th day of November, 2012 to the following:

Charles Tony Piccuta
Christopher R Blevins
Houser & Allison
A Professional Corporation
9970 Research Drive
Irvine, California 92618

*Attorney for Ocwen Loan Servicing, LLC; Litton Loan Servicing, LP; Mortgage Electronic Registration Systems, Inc.*

Kim R Lepore
Wright, Finalay & Zak, LLP
111 E Dunlap Avenue
Suite 1-457
Phoenix, Arizona 85020

*Attorney for Old Republic National Title Insurance Company*

/Dennis C Elwess
Dennis C Elwess

1